IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH BEAVER | : | CIVIL ACTION |
| | : | NO. 15-2784 |
| v. | : | |
| | : | |
| DELAWARE COUNTY PROBATION | : | |
| AND PAROLE, et al | : | |

O'NEILL, J.                                                                                              August 16, 2016

## MEMORANDUM

Now before me are two motions to dismiss the claims set forth in the amended complaint, Dkt. No. 20, of plaintiff Keith Beaver, who is proceeding pro se.  First is a motion to dismiss by defendants Delaware County Adult Probation and Parole (DCAPP), Jeff Roney and Keith Taylor (the DCAPP defendants).  Dkt. No. 21.  Second is a motion to dismiss by defendants Pennsylvania Forensic Associates (PFA) and Dr. David Holden (the PFA defendants).  Dkt. No. 22.  Also before me is plaintiff's response thereto.  Dkt. No. 28.  For the reasons that follow, I will grant defendants' motions and dismiss plaintiff's complaint.

## BACKGROUND

Plaintiff is an inmate at SCI-Laurel Highlands.  Dkt. No. 20 at ECF p. 1.  During the time relevant to his claims in this action, plaintiff alleges that he was on probation and participating in court-ordered sex offender treatment at PFA.  Id. at ECF p. 1-2.  Plaintiff maintains that in October 2014 he asked the group facilitator about Relapse Prevention, a PFA program that could possibly reduce his probation time.[1]  Id.  After learning the program had been discontinued, plaintiff maintains that he began questioning other services being provided by his treatment group.  Id. at ECF p. 2-3.

---

[1] Jonathan Hunt, the group facilitator, is deceased and not named in this action. See Dkt. No. 20 at ECF p. 1-3.

Plaintiff contends that defendant Probation Officer Taylor "informed/accused [him] of some questionable searches on [his] computer" during a home compliance check in November 2014. Id. He maintains that he was accused of watching pornography for two months and was "exonerated" by a polygraph test wherein he admitted that he attempted to watch pornography in March 2014. Id. He alleges that he discussed this with his treatment group. Id.

Plaintiff contends that on February 6, 2015 he had dinner with his sponsor, his sponsor's wife, his girlfriend and her two grandchildren. Id. He maintains that his girlfriend was an "approved supervisor by Mr. Taylor." Id. Plaintiff alleges that he discussed the dinner with his treatment group. Id. He contends that the group facilitator informed him that this was inappropriate contact with minors and notified Taylor. Id. He avers that "Rule #5 of the [DCAPP] Sex Offenders Rules and Regulations states[:] [i]f your offense involves a minor . . . you are not allowed to have contact with minors or incapacitated persons without a responsible adult present." Id. Plaintiff maintains that both Taylor and Roney, who was Taylor's supervisor, were "well aware" that this was not a violation because "the restaurant was filled with responsible adults" and his girlfriend was an approved supervisor. Id. at ECF p. 4. He alleges that, notwithstanding, Taylor and Roney placed him under arrest for contact with minors. Id. He contends that his arrest lacked probable cause because his "conduct was well within the acceptable limits" of his probation and he was instead arrested because he questioned group services. Id. at ECF p. 5.

Plaintiff had a Gagnon I hearing in the Delaware County Court of Common Pleas on February 19, 2015 and a Gagnon II hearing on March 18, 2015.[2] Dkt. No. 21-2 at ECF p. 19.

---

[2] The DCAPP defendants attach to their motion plaintiff's criminal docket. Dkt. No. 21-2. "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." See

Plaintiff alleges that at his Gagnon II hearing the court "ruled there was no inappropriate contact, but found [him] in violation of other rules." Dkt. No. 20 at ECF p. 5. The court revoked plaintiff's probation and sentenced him to back time of 572 days in prison. Dkt. No. 21-2 at ECF p. 8. Plaintiff appealed the revocation of his probation to the Superior Court of Pennsylvania. Id. at ECF p. 18.

Plaintiff brought this action on May 18, 2015. Dkt. No. 1. On October 15, 2015, plaintiff filed his amended complaint, which all defendants have moved to dismiss. Id. Plaintiff brings suit pursuant to 42 U.S.C. § 1983, alleging equal protection and due process violations under the Fourteenth Amendment and a false arrest claim under the Fourth Amendment. See Dkt. No. 20 at ECF p. 3-4. Plaintiff also brings suit pursuant to 42 U.S.C. §§ 1985 and 1986, alleging that the individual defendants conspired to maliciously arrest him and revoke his parole. Id. He has sued all defendants in their official and individual capacities and seeks two and a half million dollars[3] in compensatory damages and punitive damages as relief. Id. at ECF p. 2, 5.

## STANDARD OF REVIEW

I. **Motion to Dismiss for Lack of Subject Matter Jurisdiction: 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of subject matter jurisdiction. A motion under Rule 12(b)(1) may be treated as either a facial attack on the complaint or a factual challenge to the court's subject matter jurisdiction. Gould Elecs.,

---

Pension Ben. Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Because plaintiff's criminal docket is a matter of public record, I will consider it to decide defendants' motion to dismiss.

[3] Rule 5.1.1 of the Local Rules of Civil Procedure provides that "no pleading asserting a claim for unliquidated damages shall contain any allegation as to the specific dollar amount claimed, but such pleadings shall contain allegations sufficient to establish the jurisdiction of the Court." E.D. Pa. Local R. Civ. P. 5.1.1. Because the Court's jurisdiction in this case is based on the existence of a federal question, plaintiff need not plead a specific amount-in-controversy.

Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). A court reviewing a facial attack may consider only the allegations of the complaint and any documents referenced therein or attached thereto in the light most favorable to the plaintiff. Id. In reviewing a factual attack, a court may consider evidence outside the pleadings. Id.

Plaintiff bears the burden of persuasion when subject matter jurisdiction is challenged, but the legal standard for surviving a Rule 12(b)(1) motion is a low one. Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). "A claim may be dismissed under Rule 12(b)(1) only if it 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" Gould, 220 F.3d at 178. Nevertheless, "dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" Kulick v. Pocono Downs Racing Ass'n, 816 F.2d 895, 899 (3d Cir. 1987), quoting Oneida Indian Nation v. Cnty. of Oneida, 414 U.S. 661, 666 (1974).

## II.     Motion to Dismiss for Failure to State a Claim: 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id.

(citations omitted). This "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id. at 556. The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678. The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679. The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2).

## DISCUSSION

### I. Jurisdiction

#### A. Eleventh Amendment Immunity

Plaintiff brings federal claims against all defendants in their official capacity pursuant to 42 U.S.C. §§ 1983, 1985, 1986 alleging violations of his Fourth and Fourteenth Amendment

rights and conspiracies to deprive him of his Fourth and Fourteenth Amendment rights.  See Dkt. No. 20 at ECF p. 2-4.  The DCAPP defendants assert that plaintiff's official capacity claims against them are barred by Eleventh Amendment immunity. [4]  Dkt. No.21 at ECF p. 9-11.

The Eleventh Amendment provides that "an unconsenting State is immune from suits brought in federal courts by her own citizens. . . ." Emps. of Dep't of Pub. Health & Welfare, Mo. v. Dep't of Pub. Health & Welfare, Mo., 411 U.S. 279, 280 (1973) (further citations omitted).  "Eleventh Amendment immunity is . . . subject to three primary exceptions:  (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002).  Congress did not abrogate Eleventh Amendment immunity when it enacted § 1983.  See Quern v. Jordan, 440 U.S. 332, 345 (1979).  Moreover, Pennsylvania has not waived its Eleventh Amendment immunity.  1 Pa. Cons. Stat. Ann. § 2310.  Finally, plaintiff is not seeking injunctive or declaratory relief.

Further, the Eleventh Amendment also prohibits suits against state agencies and departments.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).  For purposes of Eleventh Amendment immunity, the probation and parole departments of Pennsylvania's judicial districts are state entities.  See Benn v. First Judicial Dist., 426 F.3d 233, 241 (3d Cir. 2005); Haybarger v. Lawrence Cnty. Adult Prob. & Parole, 551 F.3d 193, 198 (3d Cir. 2008); see also, Henry v. Phila. Hous. Prob. & Parole, 297 F. App'x 90, 91 n. 1 (3d Cir. 2008) (noting that the Philadelphia Adult Probation and Parole Department is an arm of the

---

[4] I note that plaintiff cannot bring official capacity suits against the PFA defendants because, as is further set forth herein, PFA is not a state entity and its employees are not state officials.  See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"), quoting Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 n.5 (1978).  Thus, I will dismiss plaintiff's official capacity claims against the PFA defendants.

Commonwealth and that the "Eleventh Amendment would have barred any claims on appeal against the PAPPD."). Thus, the Eleventh Amendment bars any claims against defendant DCAPP in its official capacity because it is an agency of the Commonwealth of Pennsylvania.[5]

Likewise, Eleventh Amendment immunity shields state officials who are sued in their official capacities for monetary relief. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 64, 70-71 (1989); Graham, 473 U.S. at 170; see also Hafer v. Melo, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State."). Therefore, I will dismiss plaintiff's claims against Taylor and Roney to the extent that he brings his claims against them Taylor and Roney in their official capacities.[6]

**B. Rooker-Feldman Doctrine**

Next, all defendants argue that plaintiff's claims are barred by the Rooker-Feldman doctrine. Dkt. No. 21 at ECF p. 11; see Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983). "The Rooker-Feldman doctrine deprives federal district courts of jurisdiction 'over suits that are essentially appeals from state-court

---

[5] I will also dismiss the individual capacity claims against defendant DCAPP. DCAPP it is not a "person" who may be sued under § 1983. See Vega v. Dunlap, No. 3:12-1767, 2012 WL 6622135, at *6 (M.D. Pa. Nov. 26, 2012) ("Pocono Mountain Regional Police Department, Monroe County Correctional Facility, and Monroe County Department of Probation and Parole . . . are not "persons" under § 1983"), report and recommendation adopted as modified, No. 3:12-1767, 2012 WL 6622714 (M.D. Pa. Dec. 19, 2012).
Further, to the extent plaintiff attempts to hold DCAPP liable for the actions of its employees, I will dismiss plaintiff's claims because he has not made any factual allegations to support a claim that Taylor and Roney's actions were attributable to either a DCAPP policy or custom. Respondeat superior liability is not available under § 1983 unless plaintiff alleges a "policy or custom, and that the policy caused the constitutional violation [he] allege[s]." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003), citing Monell, 436 U.S. at 691; Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 404 (1997).

[6] In his response to defendants' motion to dismiss, plaintiff cites Bell v. Hood, 327 U.S. 678 (1946), to suggest that there is subject matter jurisdiction over his claims. Dkt. No. 28 at ECF p. 5. However, Bell did not address the issue of Eleventh Amendment immunity. Therefore, it does not change my conclusion that Eleventh Amendment immunity bars plaintiff's official capacity claims against the DCAPP defendants.

judgments.'" Howell v. Young, 530 F. App'x 98, 100 (3d Cir. 2013), quoting Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 165 (3d Cir. 2010). The Rooker-Feldman doctrine applies where: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." Great W. Mining, 615 F.3d at 166, quoting Exxon Mobil Corp v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

To the extent that plaintiff's Fourteenth Amendment due process and equal protection claims stem from the revocation of his probation, I find that they are barred by the Rooker-Feldman doctrine. First, the first and third elements of Rooker-Feldman are met with respect to his Fourteenth Amendment claims: he lost in state court and the state court judgment revoking his probation occurred prior to this federal action. See Dkt. No. 20 at ECF p. 1, 5; Dkt. No. 21-2 at ECF p. 8.

Further, the Court of Appeals has explained that "[t]he second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." Great W. Mining, 615 F.3d at 166. The second requirement is best understood as an "inquiry into the source of the plaintiff's injury." Id. Here, plaintiff alleges that his Fourteenth Amendment right to due process and equal protection were violated by the revocation of his probation and his subsequent dismissal from group. See Dkt. No. 20 at ECF p. 3-4. Specifically, plaintiff alleges that he "had a liberty interest in remaining in group, continuing his education and his employment." Dkt. No. 20 at ECF p. 4. He also alleges that he "was singled out from other group members in . . . that he was dismissed from the group and his probation revoked" and "was treated differently from similarly situated group members, intentionally and without

rational basis. . . ." Id. at ECF p. 4-5. Plaintiff's Fourteenth Amendment claims satisfy Rooker-Feldman's second requirement because his alleged injuries—the revocation of his probation and dismissal from group—are the product of the state court's judgment finding that plaintiff violated his probation and are not the product of defendants' alleged conspiracy. See Great W. Mining, 615 F.3d at 167 ("The critical task is thus to identify those federal suits that profess to complain of injury by a third party, but actually complain of injury 'produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'"), quoting Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 88 (2d Cir. 2005).

The fourth requirement targets whether the plaintiff's claims require a district court to review and reject the state court's judgment. Great W. Mining, 615 F.3d at 169. Because plaintiff's alleged equal protection and due process violations stem from the state court judgment, district court review would require determining whether the proceeding comported with the mandates of the Fourteenth Amendment. See id. ("[P]rohibited appellate review 'consists of a review of the proceedings already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with law.'"), quoting Bolden v. City of Topeka, Ks., 441 F.3d 1129, 1143 (10th Cir. 2006). All of the elements of Rooker-Feldman having been met, I have no jurisdiction to consider plaintiff's claims with respect to the revocation of his probation and I must dismiss them.

Conversely, plaintiff's Fourth Amendment and conspiracy claims are not barred by the Rooker-Feldman doctrine. Rooker-Feldman does not bar a federal plaintiff from bringing claims that complain of "injur[ies] caused by the defendant's actions and not by the state-court judgment." Great W. Mining, 615 F.3d at 167 (further citations omitted). To the extent that plaintiff alleges that the DCAPP defendants arrested him without probable cause and that all

individual defendants conspired to violate his Fourth and Fourteenth Amendment rights, plaintiff is complaining of independent constitutional violations not produced by the state court judgment. See id. at 173 ("The fact that [d]efendants' actions, rather than the state-court judgments, were the source of [the plaintiff's] injuries is alone sufficient to make Rooker-Feldman inapplicable here."). Accordingly, the Rooker-Feldman doctrine does not bar these claims.

## II. Failure to State a Claim

### A. Section 1983: Constitutional Claims

To state a claim under 42 U.S.C. § 1983, plaintiff must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct complained of deprived the plaintiff of rights, privileges or immunities secured by the laws or the Constitution of the United States. See Rehberg v. Paulk, — U.S. —, 132 S. Ct. 1497, 1501 (2012). To survive a motion to dismiss, plaintiff must also allege personal involvement on the part of the defendants with "allegations of personal direction or actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998).

#### 1. Claims Against the PFA Defendants

The PFA defendants argue that plaintiff's § 1983 claims against them are not cognizable because PFA is not a state agency and defendant Holden is not a state actor. However, there are circumstances in which private actors may be regarded as acting under color of law pursuant to § 1983. See Donnell v. Corr. Health Servs. Inc., 405 F. App'x 617, 622 n. 5 (3d Cir. 2010). Three tests guide this inquiry: (1) whether the defendant exercised powers that are "traditionally the exclusive prerogative of the state"; (2) whether the defendant acted "with the help of or in

concert with state officials"; or (3) whether the "state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009), citing Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir. 1995).

Plaintiff relies only on conclusory statements that the PFA defendants were acting under authority granted them from Delaware County and that he "had no choice in the provider of his [c]ourt ordered sex offender treatment." See Dkt. No. 20 at ECF p. 3. These allegations alone are insufficient to suggest that the PFA defendants were acting under color of law. First, the PFA defendants note that they did not have the authority to arrest plaintiff for the suspected probation violation. Dkt. No. 22-2 at ECF p. 5. Second, plaintiff has not sufficiently alleged that the PFA defendants were acting in concert with the DCAPP defendants. Finally, the allegation that plaintiff had no choice in the provider of his sex offender treatment is insufficient to establish an interdependence between the state and PFA.[7] To the extent that plaintiff brings suit against the PFA defendants for claims arising under § 1983, I will dismiss them.

### 2. Fourth Amendment: False Arrest

The DCAPP defendants argue that plaintiff's false arrest claim is barred under Heck v. Humphrey, 520 U.S. 477 (1994). Plaintiff cannot bring a § 1983 claim for an "allegedly

---

[7] Even assuming that the individual PFA defendants were either appointed by the court or acting under authority granted them from Delaware County, they would be entitled to absolute immunity to the extent that plaintiff's claims stem from making recommendations about the suitability of probation. See Williams v. Consovoy, 453 F.3d 173, 178 (3d Cir. 2006) ("[I]ndividuals who perform investigative or evaluative functions at a governmental adjudicative entity's request to assist that entity in its decisionmaking process are entitled to absolute immunity.") (citing cases). To the extent that plaintiff's claims against defendant Holden stem from his testimony at plaintiff's revocation hearing, he is entitled to absolute immunity. See Mikhail v. Kahn, 991 F. Supp. 2d 596, 664 (E.D. Pa. 2014) (noting that absolute witness immunity would shield defendants to the extent that claims related to their testimony in state court, even against allegations of perjury and conspiracy).

unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid . . . [unless] the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The Court of Appeals has extended the application of Heck to the revocation of probation. See Williams, 453 F.3d at 177.

Plaintiff alleges that defendants Taylor and Roney violated the Fourth Amendment because his arrest "on the charge of having contact with minors lacked probable cause because no rules had be[e]n violated." Dkt. No. 20 at ECF p. 5. He argues that his false arrest claim is not barred by Heck because a state court found him not in violation of the alleged cause of arrest, "contact with minors." See Dkt. No. 20 at ECF p. 4-5. He alleges that two polygraphs prior to his arrest "exonerated him" of any other wrongdoing, leaving contact with minors as the only reason for his arrest. See Dkt. No. 20 at ECF p. 5. However, at plaintiff's Gagnon I hearing the state court found that there was probable cause to believe that plaintiff violated his probation.[8] See Dkt. No. 21-2 at ECF p. 19. Subsequently, at his Gagnon II hearing, the court found him in violation of rules other than "contact with minors" and revoked his probation. Dkt. No. 20 at ECF p. 5.

Further, to succeed on his false arrest claim, plaintiff must establish that: (1) there was an arrest; and (2) the arrest was made without probable cause. James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012). "The proper inquiry in a section 1983 claim . . . [is] whether the arresting officers had probable cause to believe the person arrested had committed the offense."

---

[8] Plaintiff makes no mention of his Gagnon I hearing in his complaint. A Gagnon II hearing, however, only occurs once it is determined at the Gagnon I that there was probable cause to believe a probation violation occurred. See Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973).

Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995), quoting Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988). Before a court can revoke probation, it must first find there was probable cause to conclude plaintiff committed a probation violation. Thus, a finding in this action that plaintiff's arrest was made without probable cause would necessarily invalidate the Gagnon II judgment revoking plaintiff's probation. Moreover, the revocation of plaintiff's probation has not been reversed or invalidated by the Superior Court of Pennsylvania.[9] Therefore, I will dismiss plaintiff's Fourth Amendment false arrest claim because it is barred by Heck.

### B. Section 1985 and Section 1986: Conspiracy Claims

Plaintiff alleges that the DCAPP defendants conspired with the PFA defendants to arrest plaintiff and revoke his probation. See Dkt. No. 20 at ECF p. 3-4. Plaintiff's complaint purports to bring his conspiracy claims under § 1985. Subsection (3) of Section 1985 provides a cause of action against a person who conspires "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). When plaintiff's complaint is stripped of the legal conclusion that the defendants conspired to deprive him of his civil rights, it alleges no facts to demonstrate an actual agreement to conspire.[10] See Dkt. No. 20 at ECF p. 2-4. "Mere conclusory allegations that a conspiracy existed will not survive a motion to dismiss." Boykin v.

---

[9] According to plaintiff's criminal docket, an appeal is pending in the Superior Court of Pennsylvania. See Dkt. No. 21-2 at ECF p. 19-20.

[10] In his response to the DCAPP defendants' motion to dismiss, plaintiff notes that he "has witnessed Mr. Hunt contact probation officers through e-mail and/or text via his personal phone" and believes discovery will reveal more specific facts. Dkt. No. 28 at ECF p. 11. Plaintiff cannot amend his complaint through responsive briefs. See Commw. of Pa. ex rel. Zimmerman v. Pepsico, 836 F.2d 173 (3d Cir. 1988). Mindful as I am of plaintiff's pro se status, "pro se litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

Bloomsburg Univ. of Pa., 893 F. Supp. 409, 418 (M.D. Pa. 1995), citing Rogin v. Bensalem Twp., 616 F.2d 680, 696 (3d Cir. 1980), aff'd without op., 91 F.3d 122 (3d Cir. 1980). Accordingly, plaintiff fails to state a claim under § 1985(3).[11]  It follows that there can be no claim under 42 U.S.C § 1986.  See Rogin, 616 F.2d at 696 ("Because transgressions of § 1986 by definition depend on a preexisting violation of § 1985, if the claimant does not set forth a cause of action under the latter, its claim under the former necessarily must fail also.").  Therefore, I will dismiss both plaintiff's § 1985(3) and § 1986 claim.[12]

### III.     Leave to Amend

Finally, I find that any amendment to plaintiff's claims would be futile.  See In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (finding that "futility" may justify a denial of leave to amend).  Plaintiff's official capacity claims are barred by

---

[11]  Even if plaintiff did state a claim under § 1985(3), all defendants argue that they would be immune from suit.  The DCAPP defendants raise the defense of qualified immunity. Dkt. No. 21 at ECF p. 15-16.  Qualified immunity shields governmental officials from liability while performing discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The only factual allegation connecting the DCAPP and PFA defendants rests upon a phone call defendant Hunt made to defendant Taylor reporting a potential probation violation.  Defendant Hunt's report about potential inappropriate contact with minors is sufficient to permit a reasonable officer to believe that an offense had been committed.  See Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995).  Thus, under the allegations in the amended complaint, the DCAPP defendants did not violate clearly established statutory or constitutional law and would be entitled to qualified immunity.

The PFA defendants argue that defendant Hunt and defendant Holden are entitled to absolute immunity because the only allegations against them stem from a recommendation made to plaintiff's probation officers and testimony at plaintiff's hearing.  See Dkt. No. 22-2 at 5-6. For reasons already stated, they are entitled to absolute immunity.

[12]  All defendants address plaintiff's conspiracy claims under § 1983.  To the extent that plaintiff intended to plead his conspiracy claim under § 1983, he does not state a claim upon which relief can be granted.  To demonstrate existence of a conspiracy under § 1983, "plaintiff must show that two or more conspirators reached an agreement to deprive him [ ] of a constitutional right under color of law."  Laurensau v. Romarowics, 528 F. App'x 136, 140 (3d Cir. 2013).  For the same reasons I find plaintiff has not sufficiently alleged an agreement under § 1985(3), I find he has not sufficiently alleged a conspiracy under § 1983.  Even if he did, all defendants would be entitled to the same immunities.

Eleventh Amendment immunity.  His Fourteenth Amendment claims are barred by the <u>Rooker-Feldman</u> doctrine and his Fourth Amendment claim is barred by <u>Heck</u>.  Plaintiff has also failed to state a claim for a conspiracy to deprive him of his civil rights, but even if he did all defendants would be immune from suit.  Accordingly, I will dismiss plaintiff's claims in their entirety without leave to amend.

     An appropriate Order follows.